Everyone, as you all know, we were going to have this live in New Orleans and then some snow came around. So we moved it to zoom. I'm glad that we could all get on here on zoom. Glad to have you all sorry, we couldn't do it live. But I do want to be sure everybody stays safe and well. So with that, we'll go ahead and begin with case number 24-30706 Roake v. Brumley. And we'll begin with Aguinalda for Brumley. Thank you, Judge Haynes, and may it please the court. This court has long questioned the extent of its article three jurisdiction to a side establishment clause cases. That's why in Staley, the court declined on rightness grounds to adjudicate a challenge to a future display of the Mosher monument, even though the court knew exactly what that monument looked like. And that's why in Doe, the ombud court declined on standing grounds to adjudicate a challenge to school board prayers, even though the court knew that those prayers were ongoing. Now our fundamental submission in this case is that Staley and Doe foreclosed jurisdiction because plaintiffs seek to challenge hypothetical displays that do not exist, and that they have never seen. Now, we think the most straightforward basis to reverse is on rightness. So if I can, I'd like to start with Staley. And I think the two key facts in Staley that control the outcome here. One is this court in Staley knew exactly what the Mosher monument looked like. And second, at page 313, this court accepted what it called Harris County's important pledge to display the monument again, after the courthouse renovations were complete. Now that together to direct directly controls the outcome in this case, because unlike with the Mosher monument, plaintiffs in this case cannot tell you exactly what an HB 71 display would look like. They can't tell you what size it'll be where it will be located in the classroom. It's a minimum size. In this no doubt. That's absolutely right, Judge Haynes. So they can speak to that. And isn't a school classroom a little different from some place like in Staley? So there's a couple things baked in there, Your Honor. As to the minimum requirements, absolutely, there are minimum requirements set forth in the statute, namely, the minimum size, the central focus, and the requirement that they be in classrooms. Your Honor, you could say the exact same thing about the Mosher monument in Staley, because this court knew everything, it knew the dimensions, it knew the text on the monument, it knew where it was located for years prior to its placement in the warehouse, all those things were the exact same. So as to the minimum requirements, Your Honor, all those dimensions, you say the exact same thing about the Mosher monument. And yet this en banc court said that that challenge to a future display was still not right. Now, the second part of your question, Your Honor was, is a school different? And respectfully, Your Honor, the answer to that is no, in this rightness context, for a couple of reasons. I think the primary one is that when this Supreme Court decided Van Orden in McCreary County, it recognized that it had only one prior precedent on the issue of Ten Commandments displays, it knew that Stone was out there. And what the Supreme Court said in both decisions, and the way it distinguished Stone was on the context. McCreary County said Stone is about a case where the Ten Commandments were an isolated exhibition. That's an exact quote from McCreary County. That's what Stone's about. We know this this case, I mean, we have declarations from the school boards in this case, paragraph 13 of each of the school board declarations that says that schools here, the defendants here do not intend to post isolated displays of the Ten Commandments. So put that to the side for one moment, the context here, Your Honor, the inquiry that the importance of context to the Staley analysis is exactly the same in the school context as it was in Van Orden on the Texas State Capitol grounds, and as it was in the courthouse in McCreary County. How often does anybody go to a state capitol versus how often kids go to school? And kids are required to go to school. Most of the time, you're not required to go to a state capitol. Maybe there's an occasion that you are, but for the most part, not. So isn't that quite different? Your Honor, I think that probably goes more to standing and merits. I don't think it matters as a matter of rightness, because the question you're asking, as a matter of rightness, is, is this a case that is fit for judicial decision? And the reason Staley comes out the way it does, is it says the Supreme Court has told us that when we have a Ten Commandments display to consider, the context surrounding it is what actually drives the merits analysis. And that's why you get the decisions you do in Van Orden and McCreary County that come out opposite directions, is that what the Supreme Court was doing there was parsing, what does the actual display look like? And more importantly, what surrounds the display? And I think that's the problem with plaintiff's position in this case, Your Honor, is that they don't know what will be around the display. They don't know literally what will be on the display other than the text of the Ten  Well, I do have that question. I didn't go to school in Louisiana. So what do the classrooms look like? How big are they? And how very much different could they be under this statute in terms of where it is and what it looks like and all that? I understand your argument on that. So I'm trying to understand, they are basically making it a facial challenge. So what could it be done in a classroom that it wouldn't be seen by the kids? Sure, Your Honor. So, you know, candidly, the record doesn't speak to how, you know, our thousands of classrooms look. And I only know from personal experience what a few of those look like. And I can tell you, you know, to have 30, 40 students in a classroom, it's that those are large classrooms. And as you might expect, those are classrooms that typically already have displays on the walls. I mean, given the nature of some classrooms, especially, you know, younger kids classrooms where they only have one classroom the whole day, there are a ton of posters and displays already on the walls there. And what our point is here, Your Honor, is that there is a fundamental difference between, for example, an 11 inch by 14 inch poster in the back corner of a classroom, and an 11 foot by 14 foot poster in the front wall of a classroom. I mean, HB 71 allows both of those things. And what plaintiffs can't tell you is, and those, I think what Staley says, is those differences, those factual differences are what matter to the merits analysis, because that affects what people see or do not see. And you know, if we had a wall sized version copy of the Ten Commandments, that's fundamentally different than a museum style, small posters, discussing the Ten Commandments and other important historical documents. Those are important differences. And I think McCreary County is especially helpful to think about in this context, because McCreary is a case where you had three different displays. The first one, the very first one was basically stone that the court considered it was an isolated expedition exhibition of the Ten Commandments. And that's where the Supreme Court cited stone in the McCreary County decision. That's the only place actually, it didn't cite it in the context of the subsequent displays of the commandments in McCreary County, it was just that first one. But what the county did in the second and third iterations of the displays was that it changed the context, it shifted things around, it removed some things, it added some things, it added reasons for why it was doing those things. And what the Supreme Court said, is all of those changes factor in on the merits. And our basic point here is not to say that there won't be a justiciable dispute at some point down the road, there absolutely will be. But you don't have the facts before you to actually answer the question, what is the context of the display? And in fact, because the plaintiffs jumped the gun here and filed an unright case, no court in this litigation will ever have that important context. And if you take Staley at its word, when it says the context is important to the Supreme Court, it's important to us. I mean, rightness really resolves that threshold jurisdictional issue. Now, I'm sorry. Was somebody else saying something? Can you explain why this statute was passed? I understand that history is interesting, but there's a ton of history in the world. And again, I'm respectful of the 10 Commandments. And I think everybody is. But that doesn't mean it has to be put in every classroom in a state under the First Amendment. So, Your Honor, I want to hit that very quickly on the merits and hopefully try to circle back to standing. But you know, I think your question goes more to the merits, Judge Haynes. And the honest answer is the legislature gave you express factual findings on this point, the legislature told you why it did what it did, which is, it recognized that the Supreme Court has long said that the 10 Commandments have historical significance as a foundation of our legal system. And the legislature made the judgment that it wished to teach its students to put on classroom walls that exact concept. And that's why you have a context statement, a three paragraph context statement in the law itself laying out the relevance of the Commandments to public education specifically. And that's why, you know, we've said that, and I think the Attorney General's guidance is helpful here, if you look at those four posters, you know, there are numerous ways that schools can actually implement the law that teach anybody who happens to read the poster, new facts that they probably didn't know. I mean, I don't know how many people know the architecture of the House of Representatives chamber, or the architecture of the Supreme Court. Those are interesting facts that go to show just how pervasive and important the 10 Commandments role has been in American history. So Judge Haynes, I mean, I think you have factual findings in the law that answer your question from the legislature's perspective. The only other thing, the caveat that I would add just as a backstop is to respectfully push back on the idea that you should ask, what was the purpose here? Because if Kennedy says anything, Kennedy says, you no longer ask about the purpose of the law, you ask about whether the challenge to action falls within reflects one of the hallmarks of an establishment of religion. So on this purpose point, I think respectfully, that's off the table after Kennedy. But if I can, Judge Haynes, I mean, rightness we started with, I think that jurisdictionally resolves the case. Standing is the flip side of that coin. And the reason we've pressed standing hard is if you look at Barber and Doe, what Barber says at page 353, it cites Doe and it says, in cases involving religious displays, and exercises, we have required an encounter with the offending item or action to confer standing. That's black letter law from Doe repeated again in Barber. And our point here is that actual encounter requirement plainly is not satisfied in this case. Nobody disputes that. And Judge Dennis, I know you joined the dissent, Judge Barksdale's dissent and Judge Benavides' dissent in Doe, but I think it's important to remember that every single writing judge there agreed that this court requires an actual confrontation. The only debate in Doe between the dissenters and the majority was, was there record evidence showing such a confrontation. But if you look at for example, page 501 of Judge Barksdale's dissent in Doe, he says there what he thought were the two key facts, quote, necessary to satisfy standing. One, the Doe's attended school board prayer meeting or school board meetings. And two, they were offended by the prayers. That's what he called necessary for standing. And then Judge Benavides' dissent closes at page 512. And he says that it was that exposure that alleged exposure at the meetings that gave the plaintiffs in his view, standing to file the suit. So there was no disagreement on this actual encounter requirement. And so that's why we think that, you know, Doe is the flip side of the rightness inquiry here. Because even if you think the case were right, as a matter of standing, this court's binding on bond precedent says you need an actual encounter in order to bring a claim like plaintiffs have brought in this case. And that makes sense. You know, I just want I that's black letter law, but I want to provide just a short justification for that as a matter of doctrine, which is this court recognized in Mack and other cases following it, that what this court's Establishment Clause cases have done is basically watered down ordinary standing requirements in this context, specifically the injury in fact requirement. And so what requiring an actual encounter does is really the most important guardrail because it requires a plaintiff to concretely specify what has allegedly harmed the plaintiff. And that's turning back to your statement about not discussing the Doesn't that purpose affect the preliminary injunction issue of whether it harms the defendants if the preliminary injunction remains? They passed a law that was getting them $1 million a day and that was enjoined, that would be different from something that was taking away $1 million a day, right? So it would matter what the point was and what's going on to know how the preliminary injunction affects them? Or are you agreeing that it does not harm them? If a preliminary injunction is granted, you just think the merits don't meet them and all the and you don't think we should get to the merits because of the standing and the brightness and all that. I think the latter part, Judge Haynes, I mean, they're only irreparable harm argument depends on the court first finding that there's a First Amendment violation. They say that the violation of their First Amendment right is per irreparable harm, which is true as a matter of black letter law. But that just dovetails with the merits analysis. And our point, Judge Haynes, is that the majority in Kennedy was very clear that it was rejecting any inquiry into purpose, turning back to historical traditions and understanding. And once you do that, once you reject lemon prong one, which is the secular purpose prong, then purpose is thrown out the window. And the only remaining question is whether you've satisfied Kennedy as the majority wrote it. Now there are a couple of other I see my time is running out. There are a couple of other kind of related and minor issues that I want to address very quickly. First, Your Honors, as you know, there is this issue of the notice provision that has been briefed back and forth on the back end of our briefs. It was the district court's requirement that the state notify non parties of the injunction, and that the law was unconstitutional. If you look at the supplemental letter brief from the plaintiffs at page 10, footnote nine, they say that they have mooted that issue by themselves sending the required notice to all Louisiana schools. You know, under Munsingwear and ordinary vacature principles that this court discussed in Staley, the unilateral action of a prevailing party below that moves an issue on appeal requires vacature of that portion of the injunction. So that small issue on the side, obviously, it's an ancillary issue in the case, but that small issue, I think, plainly requires a vacature of that portion of the injunction order below. And the other point on jurisdiction, Your Honors, we touched on sovereign immunity in the briefing. We didn't hit it too hard because it's not a complete win for us because it only addresses the state officials. But I do think it's important that the court say something about sovereign immunity, because it will correct what respectfully is a mistaken view of the law below. The sovereign immunity as to Superintendent Brumley and the members of Vesey plaintiffs agree they can't sue those statewide officials unless Ex parte Young gives them an exception to those statewide officials sovereign immunity. Now what they say at page 38 of their opening brief is that this is a pre enforcement case that they've brought against those state officials. But if you look at cases like Whole Women's Health versus Jackson, and Ex parte Young itself, what the court means by pre enforcement is a pre enforcement challenge by a plaintiff brought against a defendant who could enforce the challenge law against the plaintiff. In this case, there's no dispute that Superintendent Brumley and the members of Vesey cannot enforce HB 71 against the plaintiffs. That's just it's impossible. And so as to those statewide officials, they have sovereign immunity, Ex parte Young does not apply. And so for those reasons, we would ask you to reverse on that ground as well. Okay, and your time's up, but you've saved time for rebuttal. Do either of my colleagues have any more questions for you right now? Okay, so we will now turn to the appellee represented by Jonathan Youngwood for Darcy Roque et al. Roque, you're Roque. Thank you. Thank you, Judge Haynes. Can you hear me? Okay, I just want to make sure you can all hear me. Okay. Um, good morning, Your Honors Jonathan Youngwood, Susan Thatcher and Bartlett for the plaintiffs and may it please the court. I want to begin by taking a moment or two to discuss exactly what the statute says and requires because it tells us exactly what the harm is here. It requires that now absent this district courts injunction, no later than January one of this year, each public school governing authority shall display the 10 commandments in each classroom in each school under its jurisdiction. That's 177 days a year for Louisiana public school students, anywhere from kindergarten to 12th grade, in every classroom, in science, in math, in English, in health, in engineering, drones, every single classroom will have this commonality. And what must be displayed the 10 commandments on a poster or a framed document that is at least 11 inches by 14 inches. And the word display is important. There was a question, Judge Haynes, you asked about, could it be hidden? There are common dictionary definitions of display. And there's court cases of display that talk about it being displayed prominently display does not mean being hidden in a corner. It means displayed in a place where it will be noticed. And it will be noticed by these students again, every day, you know, your opponent said it could be in the back. And I'm assuming that you know, talking about in a classroom where everybody's facing the teacher in the front, that's far less seeing it. Like I would not normally be seeing what's behind me except here on the zoom. Versus if it was right in front of me, then I would see it. What about that? I hear I hear the question, Your Honor. And obviously, there are different places it can be placed. I would say that as you walk into the classroom, you're probably seeing the back as you walk out, you're seeing the front classrooms have four walls, that's the only places it can go. But what makes this so significant is the requirement that it be in every single one throughout your 13 years in public school, 177 days a year. But it can't be avoided, it can't be averted. It's there. And what's there I do think matters. And Your Honor, I agree with your comment, of course, the 10 commandments are worthy of, of great respect and are profoundly meaningful to many, many people. And they have a place in our society. They don't have a place in this form in public schools. And you're just looking at the first five lines or six lines of the very prescribed text that this statute requires. They're called the 10 commandments, they are commandments, they're not comments, they're commandments. They begin, I am the Lord by God, Lord is in all caps, the statute requires it. Thou shalt have no other gods before me. Thou shalt not make to thyself any graven images. Thou shalt not take the name of the Lord by God in vain. Remember the Sabbath day to keep it holy. Again, a religious reference. The remainder of the 10 commandments are less explicit about God. But this is what will be up in every single classroom throughout a student's career in public school. They cannot be avoided by placement in the room. In fact, if they were hidden, I think it would be a statute which requires display. So that overrides and goes throughout the standing analysis, the rightness analysis, part the sovereign immunity analysis, and certainly the merits analysis, which, in this case before this court is remarkably straightforward. Because this statute says we shouldn't get to the merits because it's not right. And y'all don't have standing yet that you may someday and you could come back to us then. But not now. Because I would respond to that saying your honor. So if we go to the rightness analysis, and I recognize the overlap with standing, I'll start with rightness. What's the test? The test is the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration. Let me start with the second, the hardship to the parties of withholding court consideration is to require these students, all students in the state to go into their classroom and to have scripture facing them every single day. Your honor asked like why this part of history? Why this part? Well, to that your honor, and I agreed with my opponent that purpose isn't the all and end all here, but it is relevant to the injury. It is relevant to whether or not what was the intent that's going to be put on the students of Louisiana. If you look on the record of appeal at page 1712, the district court judge gives a very detailed summary of the legislative statements that accompanied the passage of this. I'll just read one or two of them. Representative Horton, the primary author and sponsor of the bill explained, it is so important that our children learn what God says is right, and what he says is wrong. And to allow the 10 commandments to be displayed in our classrooms as a visual aid. I believe, especially in this day and time, it's so important. And just one more representative Taylor, I really believe what we are lacking in direction, a lot of people, their children are not attending churches or whatever. So what I'm saying is we need to do something in the schools to bring people back to where they need to be. Your honor, that's establishment of religion by the representatives. And that's why I asked him because he was trying to pull from that act like it always has nothing to do with religion. Well, it clearly does. And isn't that where the First Amendment is violated? Now, again, I understand we may not get to that because we have to first address and consider and I realize this is a this is complex, the question of bribe and standing. But I think we have to ask you about all of it because if we get to merits when we need to 100% honor, and is there there's noting that stone itself the case, I think my opponent barely mentioned in his presentation, stone itself was a pre enforcement facial challenge. Like that case, by the time it got up to the appellate courts, time had passed. But at the time it was brought on the record, the Supreme Court considered in that case was a pre enforcement facial challenge, just like this, I will acknowledge it does not go deeply into rightness or standing. But the facts align completely, completely. And in every other relevant respect, this case, stone are together. What about Sally? Happy to address daily, Your Honor. So, um, as Your Honor pointed out, not schools, that can make all the difference in the world. In these cases, the protection against establishment against concerns about free exercise are in the case law, perhaps the strongest, the strongest in schools, and this statute in particularly where we're not talking about it being up once or being in the hallway once pervasive, every single classroom. That matters. Kids are required to go to school. It's kids are required to go to school, which actually takes care of the only discussion of sovereign immunity. It addresses the concern that's been briefed, and that my friend raised, which is it is being enforced against the kids by Mr. Bromley by Bessie, in the sense that they are being forced by state law to go to a school with this, this is being enforced against them. But Your Honor, to get to Sally itself, very different situation. Council said we know what the display would be in Stanley, I'm not quite sure we know that even because it was taken down and put in a warehouse. But what we don't know, and as the Stanley unbond majority acknowledged, is we don't know the when, where, or how it's going to be displayed. And in fact, the one thing that court did know, is that it wouldn't be displayed in the same way it had been, because it was in an area of the Harris County Courthouse grounds, where once the renovation was completed, there will be a stairwell. And so we couldn't have been there. And while perhaps relevant, perhaps not, it is at least notable that at least to our knowledge, it never went back up. So even if you accept that it was going to go back up, you didn't have the details here, you didn't have the size, you didn't have what would where it would go, where would where would it go here, every single classroom, you didn't have that it was going to be required to be displayed, it wasn't statute, it was practice. So perhaps the Stanley display is somewhere hidden in the courthouse, and we don't know about it. But it wasn't going to be in the same place. And so they truly didn't have the factual development that this statute gives you. There's no case that says once you know a harm is going to take place, you have to force in the First Amendment context, particularly in the establishment of free exercise clause context, you must force the harm to be suffered. In fact, the cases go the other way. Well, but your opponent is basically saying, it could be a lot of la la la. And so it could be different from it's not a one thing that we all know exactly. We do know a lot of it. I understand it. And the statute is specific about a lot of things. But he said it can be in different places, it has history above it, la la la la la. And so it may be these children that are in that are your parents, children, or I guess, they are also in this case, I'm well aware that they are, those children may never even really notice it. That's I think your opponent's argument that your clients, the specific clients here, maybe in their classroom, it's kind of a floppy joe somewhere, and they're not even seeing it. Um, Your Honor, that may be the argument. It's an argument not tied on to the statute. But the question under rightness and understanding is, do you know enough to make the decision? And with great respect for the 10 Commandments, um, given the way the statute works, given that it has to be in every classroom displayed, which I think the proper definition means prominently, it has to be in a large and easily readable font, it has to be the central focus, the central focus of whatever it's on, there is no way to dress it up. I'm aware of the illustrations that have been put in the record, the district court, consider the illustrations, I will say that the more they try to make them acceptable, which I think even at their most extreme, they're not acceptable, the less they seem to actually comply with the statute. But Your Honor, the point is, they will be there everywhere. It is not possible that a little boy or little girl is going to go through even kindergarten, without noticing this commonality of each classroom, and is not going to once they can read, not going to let them come home and ask their parents about it. And that is the concern that our parents bring, both under establishment and free exercise. And I recognize and we thank the court for its request for supplemental briefing, because we do agree, of course, that standing has to be proper for both, even though I think here the reasons and the rationales, as the letter brief show, do overlap. But it is throughout, it will be every classroom. And that's the facts that you need to know, you cannot put cartoons on it, or drawings or other things on it, and take away the fact that it must be the central focus, it must be large, it must be readable. Your Honor, in terms of your opponents kind of saying, well, in a classroom, they have a bunch of stuff up. And so they put this in the middle of a bunch of stuff. And so it's just kind of like, if you walk into a place that has a bunch of pictures, you may not notice the picture of someone you actually know, or something like that, because there's so many pictures, and you just kind of end up walking past it. So I think your opponent is kind of arguing, well, there could be this, there could be that, maybe it's the only thing in the classroom, then it's very noticeable, maybe it's part of a bunch of pictures and posters and other things. And the kids just kind of walk in and, and your clients just kind of walk in and maybe their parents tell them walk in and just look down at your desk, and at your teacher and leave it at that. So Your Honor, several things in your question. First of all, I would agree that in any individual room, somebody might not see something every day. But do remember, you're going to be going to that room and other rooms 177 days a year, you may not see it the first day, you will see it by the end of the year. And if you don't see it in your science classroom, you're going to see it in your English classroom. And you're going to remember that for every year you were a student in the Louisiana schools, it was the constant it was there. It is a statement and endorsement of religion by the state. We haven't discussed Your Honor, although it's it's briefed. It's not just the 10 Commandments. It's a version of the 10 Commandments and our collective plaintiffs come from all different faiths, some of traditional faiths, some of non traditional faiths. We have Christians, we have Jews, and they are all those who chose to bring this case, united in the concern that their children will be coerced, that their efforts on that applies to to establishment on free exercise that their efforts to be the ones many of our clients have have believe in the 10 Commandments, but they believe it's their job to teach their children about the 10 Commandments, not the job of the state. And that is why they brought the case. And so while I hear you that there could be lots of different ways, it could be in any individual classroom and not every single day, will a student notice it, the collective 177 days a year, every classroom 13 years, it is the constant, it will be unavoidable. It is a clear statement of the state of what and again, Your Honor, with all respect for the 10 Commandments, this is scripture. This is scripture. It is commandments, it is about God. And while there's commonalities of beliefs and gods, there's also differences of beliefs. But this is this is about one God, thou shalt not have sorry, thou shalt have no other gods before me, is a Protestant Christian God that is being put up in these classrooms, which again, in the proper place in church is wonderful. But in a public school classroom, is a violation of the First Amendment of the unriveness, in your view, is the fact that it's over time, you will definitely be seeing it a lot, even if you wouldn't see it, you know, on the one walkthrough. I don't. But yes, Your Honor, I don't think the test is would you see it? Every moment of every day, it's a test of is the message that it is present every moment of every day. And, and this statute, this would be a different case, if we say put it up once in one classroom, we'd have a different case, that might be challengeable, but it's not the case we have. This statute is overwhelming. And the finding of a lack of ripeness, or a lack of standing, particularly in the face of a Supreme Court decision that is undisturbed, that is undisturbed, and only Supreme Court can disturb it. saying is this is a clear constitutional violation is saying to the children of our clients, you must be harmed before you can ask for relief. And that's not that's not the jurisprudence and establishment clause cases. It's not the jurisprudence in free exercise places. It's not the jurisprudence in other aspects of the First Amendment. It may be different in other areas of the law. This is a this is a case only about the religion clauses of the First Amendment. Um, Your Honor on if there are other I don't want to cut off any questions, I was going to move on to to the merits, which I think there's actually a very brief discussion, but I do want to touch on them early before. Are you pulling back on the notice provision? Your Your Honor, I don't think it's necessary for the state to do it anymore. I think that there is law to support that the district court was correct on in issuing it, you know, including which is cited in our briefs. But you're okay with pulling? Yes. They don't need to do it, Your Honor. They don't need to do it. We've done it. I think, you know, to be honest, given the press and publicity this case has gotten, I'm sure most school boards in the state are aware of both of this decision and that this is before this court. So so correct, Your  In terms of properly raised before and below the objection to the notice. I don't recall any specific briefing on it by the state, Your Honor. If I'm incorrect on that, I'm sure counsel will correct me. And the record is the record. So I understand what you're saying, whether it was waived or not, I would have to refresh myself. I do not. I was one of the counsel who argued for the district court. I don't believe there being any objections raised there. Your Honor, for sure. It was raised before a prior panel of this court before it was assigned to Your Honors. And it's obviously in the briefing here, but I don't there was no substantial discussion of it before the district court. Counsel will correct me if my memory fails on that. Does it make a difference as to who provides the notice? In other words, an official channel versus plaintiff's counsel? Your Honor, it certainly could. And obviously you have before you a letter written by the Attorney General on January 3rd, which I will not characterize because you have it, which in some ways, certainly acknowledges there is a decision, but then goes different direction. Your Honor, yes, I think it could answer your direct question. It could make a difference. It would have the authority of the state. However, we do think we've gotten notice out. Your Honor, if you have one sentence or two, I'll let you say it. Your Honor, Stone is good law. That'll be my one sentence on Stone. Thank you. Okay. Thank you. And we'll now hear the rebuttal. Thank you, Judge Haynes. Just a few brief points on rebuttal. First, to pick up where Judge Dennis left off. The answer to your question is yes, Judge Dennis, this was briefed in the emergency stay partial admission. It was briefed in the administrative stay briefing in this court. We have citations in our reply brief there. In our opening brief, I believe they point you to the record in the district court where we address the notice provision because it plainly exceeds the judicial power. Turning to the issues on appeal, we don't dispute that plaintiffs unquestionably object to the posting of the 10 commandments in classrooms. But what the Supreme Court said in recently is that even a strong moral or ideological religious objection is not enough for standing. And my friend pointed to Stone, Judge Haynes, to say, well, Stone was a pre-enforcement challenge. And so, you know, just basically do the same thing that happened in Stone. That's not right for a couple of reasons. The first, Judge Haynes, is this court said in Doe versus Tangipahoa Parish School Board, that you don't treat decisions like that that don't address Article III jurisdiction at all, as saying that there is Article III jurisdiction. That's the en banc court's holding. And so, you know, their reliance on Stone continues to run completely contrary to this court's decision in Doe. The second point, Judge Haynes, is that what the Kentucky Supreme Court recognized in Stone was there was de facto enforcement of the law. You can see that page 51 of our opening brief, the very display that went up in thousands of classrooms across Kentucky. That's why McCreary County ultimately says this was a case about isolated exhibitions of the Ten Commandments. Everybody knew how the law was implemented. And so there was no question about that. My friend raises questions about whether our illustrations comply with the law. As we say at page 16 of the reply brief, that is a question of state law and under Pennhurst, plaintiffs can't come in here and ask for an injunction based on a federal court's determination of what it thinks state law is. That's squarely barred by Pennhurst. And this court in Dave's reaffirmed that. And we say that at page 16 of our reply brief. Judge Haynes, you had a couple of questions about where, where are these displays going to go up? A couple of responses to that. One is I think there's this implicit assumption in counsel's presentation that we're talking about elementary schools. Remember, this is a law that applies in all public classrooms, including your 200, 300 student classrooms at LSU. I mean, this and so plaintiffs are free to try to make their challenge about particular kinds of classrooms, but this is a facial challenge and they have to show, they have to prove to you, if you get to the merits, and this is one of the reasons that there's no rightness in this case, they have to prove to you that even in LSU's biggest student auditorium, that somehow an HB71 display is unconstitutional. That's the consequence of their bringing a facial challenge. The other point on that, Judge Haynes, this, sorry, Judge Ramirez. Please make that point. But I do have a question. Yes, very quickly, Your Honor. Thank you, Judge Haynes. The other point on the where question, the Attorney General's guidance, which we note at footnote one of our reply brief lays out a lot of her recommendations to schools about the where question. One is it should be placed among other posters and other educational displays. Another is it should be a particular size not to exceed about 18 or 24 inches. Another is it shouldn't be placed where a teacher is presenting live instruction and the like. So that might be to avoid any confusion about the teacher being the speaker of that poster. There are lots of these questions that are unanswered. And the only way we will know how a school implements it is that if a school actually implements the law and we know how they opted to do it. Sorry, Judge Ramirez. Can you point to any case in which a display of this type has been found permissible in the school context? I understand your arguments about standing and ripeness. But just as a starting point, can you point to any case in which this has been addressed in any way? So Your Honor, I don't believe I've got a Ten Commandments case for you. I mean, I think the Pledge of Allegiance cases may come the closest because there you're talking about both the pledge and maybe the flag. So when you look at a case like which dealt with Jehovah's Witnesses, you know, they believe that the flag itself is an image and have a sincere religious objection to that. You know, the fact that they are allowed under the First Amendment to opt out of participating in the pledge doesn't mean that they can also request that the flag be taken down, or that the pledge not be said. So, and I see my time has expired, Judge Haynes. But I'm happy to... Yeah, but if either of my colleagues have questions, you need to answer them. Would you have any more, Judge Ramirez? Do not. Thank you. Okay. All right. Well, this case is now under submission. In consideration, we appreciate y'all's arguments. Again, I'm sorry that we